1  Marc S. Williams (Bar No. 198913)
   mwilliams@cohen-williams.com
2  Brittany L. Lane (Bar No. 323440)
   blane@cohen-williams.com
3  **COHEN WILLIAMS LLP**
4  724 South Spring Street, 9th Floor
   Los Angeles, CA 90014
5  Telephone:  (213) 232-5160
   Facsimile:  (213) 232-5167
6

7  Judd Grossman (admitted *pro hac vice*)
   jgrossman@grossmanllp.com
8  Sarah Schuster (admitted *pro hac vice*)
   sschuster@grossmanllp.com
9  **GROSSMAN LLP**
   745 Fifth Ave, 5th Floor
10 New York, NY 10151
   Telephone:  (646) 770-7445
11 Facsimile:  (646) 417-7997
12

13 Attorneys for Defendants,
   SUSAN SEIDEL and SUSAN SEIDEL INC.
14

15         **UNITED STATES DISTRICT COURT**

16        **CENTRAL DISTRICT OF CALIFORNIA**

17 | RON MEYER,                    | Case No. 2:19-cv-09786-DMG-JC

18 |                               | **NOTICE OF MOTION AND MOTION
19 |                  Plaintiff,   | TO DISMISS BY DEFENDANTS
   |                               | SUSAN SEIDEL AND SUSAN SEIDEL
20 |                               | INC. FOR LACK OF PERSONAL
   |         v.                    | JURISDICTION OR,
21 |                               | ALTERNATIVELY, TO TRANSFER
   | SUSAN SEIDEL, SUSAN SEIDEL INC., | VENUE; MEMORANDUM OF
22 | JAMIE FRANKFORT, and DOES 1   | POINTS AND AUTHORITIES**
   | through 5,
23 |                               | [Proposed Order and Declaration of Susan
   |                               | Seidel Filed Concurrently Herewith]
24 |                  Defendants.
                                   | Judge:        Hon. Dolly M. Gee
25                                 | Hearing Date:  April 10, 2020
26                                 | Hearing Time:  9:30 a.m.

27

28

---

**MOTION TO DISMISS**

TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on April 10, 2020, at 9:30 a.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Dolly M. Gee, United States District Judge, Central District of California, located in Courtroom 8C at 350 West 1st Street, Los Angeles, CA 90012, Defendants Susan Seidel and Susan Seidel Inc. will and hereby do move this Court to dismiss the complaint of Plaintiff Ron Meyer for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), or, alternatively, to transfer venue under 28 U.S.C. § 1404 to the United States District Court for the Southern District of New York.

This motion is made following the January 16, 2020, conference of counsel under Local Rule 7-3.

This motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the concurrently filed Declaration of Defendant Susan Seidel, all pleadings and papers on file in this action, and the evidence and arguments that may be presented to the Court at the hearing on this matter.

Respectfully submitted,

Dated:  January 24, 2020          **GROSSMAN LLP**

By: _____
   Judd B. Grossman (*pro hac vice*)
   Sarah E. Schuster (*pro hac vice*)

**COHEN WILLIAMS LLP**
Marc S. Williams
Brittany L. Lane

Attorneys for Defendants Susan Seidel and
Susan Seidel Inc.

# TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................ 1

II.   FACTUAL AND PROCEDURAL BACKGROUND ..................................... 1

III.  LEGAL ARGUMENT .................................................................................... 3

    A.    THE CLAIMS AGAINST THE SEIDEL DEFENDANTS SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION ........................................................................... 3

         1.    The Seidel Defendants are Not Subject to General Jurisdiction............ 3

         2.    This Court Lacks Specific Jurisdiction Over the Seidel Defendants..... 4

             a.    The Seidel Defendants Have Not Purposefully Availed Themselves of the Benefits of Doing Business in California. ............................................................................ 5

                 (1)    Plaintiff and the Seidel Defendants Had No Prior Negotiations or Course of Dealing.................................. 5

                 (2)    The Sale Contract Contemplates No California Performance...................................................................... 7

                 (3)    The Parties Did Not Contemplate, and In Fact, There Were No Future Consequences Outside New York........ 7

             b.    Plaintiff's Claims Do Not Arise Out of California Contacts. .... 8

             c.    The Exercise of Personal Jurisdiction Over the Seidel Defendants Would Be Unreasonable........................................... 9

    B.    ALTERNATIVELY, THIS CASE SHOULD BE TRANSFERRED TO THE SOUTHERN DISTRICT OF NEW YORK................... 10

         1.    New York Is More Convenient for the Parties. .................................. 11

         2.    New York is More Convenient for the Critical Non-Party Witnesses. ................................................................. 12

         3.    The Interests of Justice Favor Transfer to New York........................... 13

IV.  CONCLUSION........................................................................................... 14

# TABLE OF AUTHORITIES

Page(s)

CASES

*Am. Trading Int'l, Inc. v. MCF Operating, LLC*,
  No. CV 19-5851-JFW(PLAX), 2019 WL 6139113 (C.D. Cal. Sept. 24, 2019) ............. 11

*Boot Hill Biofuels, LLC v. Vitakem Nutraceutical, Inc.*,
  No. CV101215GHKFFMX, 2010 WL 11595730 (C.D. Cal. June 16, 2010).................. 8

*Boschetto v. Hansing*,
  539 F.3d 1011 (9th Cir. 2008) ........................................................................... 8

*Calkins v. Sanford*,
  No. CV0801952MMMRZX, 2008 WL 11336463 (C.D. Cal. May 12, 2008)............... 12

*Calltek, Inc. v. Call Ctr. Sys., LLC*,
  No. 818CV00384JLSDFMX, 2018 WL 2264205 (C.D. Cal. Apr. 25, 2018).................. 5

*Capbran Holdings, LLC v. Firemall LLC*,
  No. CV162980DSFAFMX, 2017 WL 2905966 (C.D. Cal. Feb. 1, 2017) ...................... 6

*China Tech. Glob. Corp. v. Fuller, Tubb, Pomeroy & Stokes*,
  No. C 05-01793 JW, 2005 WL 1513153 (N.D. Cal. June 27, 2005)................................ 5

*Cottle v. W. Skyways Inc.*,
  No. 117CV00049DADBAM, 2017 WL 1383277 (E.D. Cal. Apr. 18, 2017).................. 6

*Daimler AG v. Bauman*,
  571 U.S. 117, 134 S. Ct. 746, 187 L. Ed. 2d 624 (2014).................................... 4

*Done! Ventures, LLC v. Gen. Elec. Co.*,
  No. CV1004420SJOJCX, 2011 WL 13217220 (C.D. Cal. Jan. 21, 2011)..................... 13

*GemCap Lending I, LLC v. Bateman*,
  No. CV17-3305 PSG GJSX, 2017 WL 8183191 (C.D. Cal. July 17, 2017)................... 11

*Hong v. Recreational Equip., Inc.*,
  No. CV1808519DDPSSX, 2019 WL 2124529 (C.D. Cal. May 15, 2019) ...................... 3

*Kirkhill Aircraft Parts Co. v. Aircraft Sys. Div. of Com-Jet Corp.*,
  No. SACV160811DOCDFMX, 2016 WL 10842585 (C.D. Cal. Aug. 3, 2016)............... 7

*Lightpath Capital, Inc. v. Phoenix Am. Hosp., LLC,*
No. 18-1131-CV-PSG (AFM), 2018 WL 5905387 (C.D. Cal. Apr. 5, 2018)...................8

*LocusPoint Networks, LLC v. D.T.V., LLC,*
No. 3:14-CV-01278-JSC, 2014 WL 3836792 (N.D. Cal. Aug. 1, 2014) ..........................7

*Metz v. U.S. Life Ins. Co. in City of New York,*
674 F. Supp. 2d 1141 (C.D. Cal. 2009) ........................................................................12

*Miller v. Head USA, Inc.,*
No. SACV161696DOCJCGX, 2016 WL 10570274 (C.D. Cal. Dec. 16, 2016)...............9

*Miyauchi Corp. v. Oswald,*
No. SACV120594DOCJPRX, 2012 WL 12952741 (C.D. Cal. Oct. 29, 2012) ..............13

*Monster Energy Co. v. Cycle Locators Inc.,*
No. EDCV1800050JGBKKX, 2018 WL 6431009 (C.D. Cal. June 25, 2018) ...........9, 10

*Moore v. ANG Transp. Inc.,*
No. 218CV02919WBSKJN, 2019 WL 2869110 (E.D. Cal. July 3, 2019) ......................8

*Navigators Specialty Ins. Co. v. Kapiolani Residential, LLC,* No. 17-CV-06575-SI,
2018 WL 1426608 (N.D. Cal. Mar. 22, 2018)...............................................................7

*Nolte v. CEC Entm't Inc.,*
No. CV 19-2463 PA (JPRX), 2019 WL 4543102 (C.D. Cal. Aug. 2, 2019) ...................4

*Painter's Dist. Council No. 30 Health & Welfare Fund v. Amgen, Inc.,*
No. CV07-3880PSGAGRX, 2007 WL 4144892 (C.D. Cal. Nov. 13, 2007)..................13

*Peace v. Parascript Mgmt., Inc.,*
No. CV 12-09663 JGB (EX), 2013 WL 12137565 (C.D. Cal. Mar. 18, 2013)...............13

*Reif v. Nagy,*
61 Misc. 3d 319, 80 N.Y.S.3d 629 (N.Y. Sup. Ct. 2018).................................................10

*Rodriguez v. California,*
No. 217CV0198JAMKJNP, 2017 WL 1740986 (E.D. Cal. May 4, 2017) .....................10

*Rubio v. Monsanto Co.,*
181 F. Supp. 3d 746 (C.D. Cal. 2016) ...........................................................................11

*Solomon R. Guggenheim Found. v. Lubell,*
77 N.Y.2d 311, 569 N.E.2d 426 (N.Y. 1991)................................................................10

*Stanbury Elec. Eng'g, LLC v. Energy Prod., Inc.*,
    No. C16-0362JLR, 2016 WL 3255003 (W.D. Wash. June 13, 2016)...............................14

*StoAmigo Int'l, LLC v. Vanbex Grp., Inc.*,
    No. CV 19-224-MWF (KSX), 2019 WL 4418817 (C.D. Cal. May 17, 2019)..................4

*Williams v. Yamaha Motor Co. Ltd.*,
    851 F.3d 1015 (9th Cir. 2017) ........................................................................4

STATUTES

28 U.S.C. § 1391(b) .........................................................................................10

28 U.S.C. § 1404 .......................................................................................11, 12

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

This case concerns a painting (the "Work") that Plaintiff purchased in New York almost two decades ago, but that he now claims is a forgery, having been created and offered for sale by a New York-based forgery ring.  Defendants Susan Seidel and Susan Seidel Inc. (together, the "Seidel Defendants") at all times have been based in New York and they—and this dispute—have only the most tenuous contacts with California.  Indeed, the only in-person negotiations and viewing of the Work occurred in New York, and the only California connection is that Plaintiff happens to live here.  So this Court lacks personal jurisdiction over the Seidel Defendants.  And because New York has the most significant connections to this litigation, the most critical non-party witnesses are located there, and key events underpinning the parties' claims and defenses occurred there, in any case this matter should be transferred to the Southern District of New York for the convenience of the parties and witnesses alike.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

Susan Seidel is an independent art advisor and consultant, who, since 1994, has been doing business under her solely owned company, Susan Seidel, Inc., a New York corporation with its only office in New York City.  (Seidel Decl. at ¶¶ 1-4.)  The Seidel Defendants do not advertise in print or media publications anywhere, they have no website, and they do not actively solicit art collectors outside New York, including California.  (*Id.* at ¶¶ 5-6.)

Nearly two decades ago, in or about January 2001, the Seidel Defendants learned that a New York art dealer named Julian Weissman claimed to be representing a family who wished to sell their Work.  (*Id.* at ¶¶ 9-11; Compl. at ¶ 4.)  Seidel viewed the Work at Weissman's Manhattan office, and Weissman agreed to consign and deliver the Work to the Seidel Defendants in Manhattan.  (Seidel Decl. at ¶¶ 12, 14-15.)

At the same time, Defendant Jaime Frankfurt, another art dealer, told the Seidel Defendants that he had a client looking to buy a painting.  (*Id.* at ¶¶ 8, 13.)  The client

Frankfurt had in mind was Plaintiff, and Frankfurt then "recommended" Seidel to Plaintiff as a reliable art dealer.  (Compl. at ¶ 4.)  Frankfurt at the time had an apartment in New York City and visited regularly.  (Seidel Decl. at ¶ 8.)  On one of his New York visits, he and Plaintiff met with Seidel at her Manhattan office to view the Work; that was the one and only time the Seidel Defendants met with Plaintiff in person.  (*Id.* at ¶ 16.)

After this one in-person meeting, Frankfurt telephoned Seidel in New York to advise her that Plaintiff wished to buy the Work.  The Seidel Defendants invoiced Plaintiff and he paid for the Work.  (*Id.* at ¶¶ 17-18.)  The Seidel Defendants retained a modest commission, remitted the net sale proceeds to Weissman, and then arranged to ship the Work from New York, using a New York-based art shipper.  (*Id.* at ¶¶ 18-20.)

Almost twenty years after the sale, in February 2019, Plaintiff's counsel sent a letter to the Seidel Defendants claiming for the first time that the Work is a forgery.  (Compl. at ¶¶ 6-8.)  In the letter, Plaintiff claimed that the Work was the product of a New York-based forgery ring that had created dozens of forged artworks—many purporting to be by the same artist, and with almost identical provenance and exhibition history as the Work here—that were ultimately sold for millions of dollars, through multiple New York art dealers and professionals, before the forgery ring was exposed publicly in 2011—almost a decade ago.  The scandal shocked the art world and resulted in multiple civil and criminal actions in New York,[1] and garnered extensive press coverage.[2]  Plaintiff apparently did

---

[1] *See, e.g., United States v. Glafira Rosales*, No. 13-cr-00518 (KPF); *Martin Hilti Family Trust v. Knoedler Gallery, LLC et al.*, No. 13 Civ. 657 (PGG) (HBP); *Fertitta v. Knoedler Gallery, LLC et al.*, No. 14–CV–2259 (JPO); *De Sole v. Knoedler Gallery, LLC et al.*, No. 12 Civ. 2313 (PGG)(HBP); *Howard v. Freedman*, 12 Civ. 5263 (PGG) (HBP).

[2] *See, e.g.*, https://www.nytimes.com/2011/12/17/arts/design/hearings-shed-light-on-dispute-over-authenticity-of-pollocks.html (last visited, January 24, 2020); https://www.nytimes.com/2013/02/23/arts/design/knoedler-company-sued-over-artworks.html (last visited, January 24, 2020); https://www.vanityfair.com/culture/2012/05/knoedler-gallery-forgery-scandal-investigation (last visited, January 24, 2020).

nothing following these revelations, and he only raised any issues when the auction house Sotheby's declined to sell the Work in early 2019.

Plaintiff filed this action in California state court, asserting fraud and related claims, seeking $10 million in damages plus exemplary damages.  (Compl. at ¶¶ 1-27.)  Because all Defendants are New York domiciliaries, the Seidel Defendants removed this case on the basis of diversity jurisdiction.  (*See* ECF No. 1.)  And now they seek to dismiss this lawsuit for lack of personal jurisdiction or, alternatively, to transfer this case to New York, where all Defendants and the most critical non-party witnesses, including Julian Weissman, are located.

## III.   LEGAL ARGUMENT

## A.   THE CLAIMS AGAINST THE SEIDEL DEFENDANTS SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION

The Court cannot exercise personal jurisdiction over the non-resident Defendants where, as here, they do not have "at least minimum contacts with the relevant forum," and therefore the exercise of jurisdiction would "offend traditional notions of fair play and substantial justice."  *Hong v. Recreational Equip., Inc.*, No. CV1808519DDPSSX, 2019 WL 2124529, at *2 (C.D. Cal. May 15, 2019) (internal citations omitted).  The Seidel Defendants are New York domiciliaries so there is no general jurisdiction in California; the action arises out of a New York-based transaction, and all the relevant underlying events took place there, so there is no specific jurisdiction; and the Seidel Defendants have virtually no contacts with California, so exercising personal jurisdiction here would not comport with due process.  This Court should dismiss the Complaint for lack of personal jurisdiction.

### 1.   The Seidel Defendants are Not Subject to General Jurisdiction.

There is no colorable argument that the Seidel Defendants are subject to general jurisdiction in California.  The United States Supreme Court has made clear that "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose [general] jurisdiction . . . For an individual, the paradigm forum for the exercise of general

jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home," usually "the place of incorporation and principal place of business." *Daimler AG v. Bauman*, 571 U.S. 117, 137, 134 S. Ct. 746, 760, 187 L. Ed. 2d 624 (2014). Neither of the Seidel Defendants falls within these categories.

Ms. Seidel is a New York domiciliary, and her company is neither incorporated, headquartered, nor physically present in any way in California. (Seidel Decl. at ¶¶ 1, 3, 4.) She and her company lack the "continuous and systematic" contacts with California that are required for general jurisdiction. And given that the Seidel Defendants do not generally seek out collectors in California or otherwise maintain any, let alone extensive connections with the state (Seidel Decl. ¶¶ 1, 4-6, 8, 16), there is no conceivable reason why this suit might represent an "exceptional case" where a non-resident might "otherwise have such extensive forum contacts to render them at home in" California. *Nolte v. CEC Entm't Inc.*, No. CV 19-2463 PA (JPRX), 2019 WL 4543102, at *5 (C.D. Cal. Aug. 2, 2019). Because the Seidel Defendants are not "at home" in California, they are not subject to general jurisdiction here.

### 2. This Court Lacks Specific Jurisdiction Over the Seidel Defendants.

Courts may "exercise specific jurisdiction over a non-resident defendant only when three requirements are satisfied: (1) the defendant either purposefully directs its activities or purposefully avails itself of the benefits afforded by the forum's laws; (2) the claim arises out of or relates to the defendant's forum-related activities; and (3) the exercise of personal jurisdiction comports with fair play and substantial justice, *i.e.*, it is reasonable." *StoAmigo Int'l, LLC v. Vanbex Grp., Inc.*, No. CV 19-224-MWF (KSX), 2019 WL 4418817, at *5 (C.D. Cal. May 17, 2019) (quoting *Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1023 (9th Cir. 2017)). Plaintiff cannot make the requisite showing as to any of these prerequisites.

### a. The Seidel Defendants Have Not Purposefully Availed Themselves of the Benefits of Doing Business in California.

"The purposeful availment requirement ensures that a nonresident defendant will not be haled into court based upon random, fortuitous or attenuated contacts with the forum state." *Calltek, Inc. v. Call Ctr. Sys., LLC*, No. 818CV00384JLSDFMX, 2018 WL 2264205, at *5 (C.D. Cal. Apr. 25, 2018) (internal citations omitted). It "requires a qualitative evaluation of the defendant's contact with the forum state," and "is satisfied if the defendant has taken deliberate action within the forum state or if he has created continuing obligations to forum residents." *Id.* In evaluating purposeful availment, the Supreme Court has identified four "particularly instructive" factors: (1) prior negotiations; (2) contemplated future consequences; (3) the terms of the contract; and (4) the parties' actual course of dealing." *Id.* "[M]erely contracting with a resident of the forum state is insufficient to confer specific jurisdiction over a nonresident." *Id.*

This Court should disregard as purely conclusory the Complaint's non-specific assertions that Seidel "has transacted substantial business in or related to California," and that she and her entity have "sometimes conducted her business in . . . California." (Compl. at ¶ 2.) A court need only accept as true the "well pled facts" in the complaint, "as distinguished from mere conclusory allegations," such as Plaintiff's here. *China Tech. Glob. Corp. v. Fuller, Tubb, Pomeroy & Stokes*, No. C 05-01793 JW, 2005 WL 1513153, at *3 (N.D. Cal. June 27, 2005). Plaintiff's claims of purposeful availment are too "vaguely and conclusorily" alleged to make out the necessary factual showing. *Id.* (insufficient to allege, without more, that defendants "did business in . . . California at all times relevant").

### (1) Plaintiff and the Seidel Defendants Had No Prior Negotiations or Course of Dealing.

Seidel did not directly solicit this transaction from a California resident. Indeed, Plaintiff does not even attempt to allege—because there would be no good-faith basis to do so—that Seidel sought out Plaintiff's business in California; to the contrary, it alleges that

5

**MOTION TO DISMISS**

another dealer, Jaime Frankfurt, pointed Plaintiff toward Seidel.  (Compl. at ¶ 4; *see also* Seidel Decl. at ¶ 13 (explaining that Frankfurt connected Plaintiff and Seidel).)   Courts recognize that "purposeful availment depends in part on which party initiated contact," and "[w]ithout additional evidence that defendant intentionally sought out business with plaintiff in California, plaintiffs cannot meet their burden to demonstrate purposeful availment." *Cottle v. W. Skyways Inc.*, No. 117CV00049DADBAM, 2017 WL 1383277, at *7 (E.D. Cal. Apr. 18, 2017) (no purposeful availment where defendant had not "actively sought them out for negotiations in California, or conducted negotiations with plaintiffs while physically in the forum").

The purposeful-availment analysis is meant to ensure "that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts or of the unilateral activity of another party [or] a third person." *Capbran Holdings, LLC v. Firemall LLC*, No. CV162980DSFAFMX, 2017 WL 2905966, at *2 (C.D. Cal. Feb. 1, 2017).  At the time of the transaction at issue, Frankfurt maintained a regular presence in New York and the Seidel Defendants dealt with him only in New York or by telephone from New York.  (Seidel Decl. at ¶ 8.)  The mere fact that another dealer recommended the Seidel Defendants to a potential California customer was a purely fortuitous and unilateral act by a third-party, not an affirmative act by the Seidel Defendants.  So too is it irrelevant for jurisdictional purposes that the Work has remained in California for years after the sale. (Compl. at ¶ 9-10.)  That is solely a function of plaintiff's unilateral conduct in dealing with his property, not any action by the Seidel Defendants.  *See Capbran Holdings, LLC v. Firemall LLC*, No. CV162980DSFAFMX, 2017 WL 2905966, at *2 (C.D. Cal. Feb. 1, 2017) (defendant cannot be haled into court "solely as a result of . . . unilateral activity of another party").

The Complaint is silent as to where the negotiations occurred—because, in fact, the initial telephone contact, and all the parties' dealings were centered in New York.  The Work was located in New York at all times, first with the owner's New York representative, and then on consignment with the Seidel Defendants at their Manhattan

**MOTION TO DISMISS**

office.  (Seidel Decl. at ¶¶ 10-14.)  Plaintiff travelled to New York to view the Work at the Seidel Defendants' Manhattan office; and they then finalized the terms of the sale remotely, via methods including telephone and wire transfer.  (*Id.* at ¶¶ 16-18.)  *See Navigators Specialty Ins. Co. v. Kapiolani Residential, LLC*, No. 17-CV-06575-SI, 2018 WL 1426608, at *7 (N.D. Cal. Mar. 22, 2018) (noting Ninth Circuit's guidance "that ordinarily use of the mails, telephone, or other international communications simply do not qualify as purposeful activity invoking the benefits and protection of the forum state" and concluding that mere fact that defendant submitted claims to plaintiff's California office did not support exercise of jurisdiction).

(2)    <strong>The Sale Contract Contemplates No California Performance.</strong>

The sale contract itself is a bare-bones invoice that has no choice-of-law provision. So the mere facts that Seidel sent the invoice for the Work to Plaintiff in California and Plaintiff paid Seidel from California (Compl. at ¶¶ 8-9) are simply incidental to the contract and are, without more, insufficient to support jurisdiction.  *See Kirkhill Aircraft Parts Co. v. Aircraft Sys. Div. of Com-Jet Corp.*, No. SACV160811DOCDFMX, 2016 WL 10842585, at *5 (C.D. Cal. Aug. 3, 2016) (the "agreement and practice of mailing or making payment in the forum state does not weigh heavily in the calculus of contacts"); *LocusPoint Networks, LLC v. D.T.V., LLC*, No. 3:14-CV-01278-JSC, 2014 WL 3836792, at *6 (N.D. Cal. Aug. 1, 2014) (giving no weight to the fact that contractually-required payment from Plaintiff to Defendant was made from Plaintiff's California bank account; "[s]uch unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction").

(3)    <strong>The Parties Did Not Contemplate, and In Fact, There Were No Future Consequences Outside New York.</strong>

The only remaining allegations in the Complaint even attempting to link the Seidel Defendants to California are that the Seidel Defendants delivered the Work from New York to Plaintiff in California.  (Compl. at ¶ 8-9.)  But in situations like this, where there is only

7

a simple sale of goods and the contract creates no ongoing obligations or relationship between the parties, courts are generally loath to find specific jurisdiction.[3]  The overall nature of this one-off sale contract contemplated no further obligations or ongoing relationship between the parties whatsoever; and indeed, the Seidel Defendants never did any other business with the Plaintiff.  (Seidel Decl. at ¶ 21.)  This was precisely the kind of one-shot transaction that does not give rise to personal jurisdiction.

### b.  Plaintiff's Claims Do Not Arise Out of California Contacts.

There is no personal jurisdiction for the separate and independent reason that Plaintiff's claims do not "arise[] out of or relate[] to the defendant's forum related activities," where there is no "direct nexus between the cause of action being asserted and the defendant's activities in the forum."  *See Lightpath Capital, Inc. v. Phoenix Am. Hosp., LLC*, No. 18-1131-CV-PSG (AFM), 2018 WL 5905387, at *5–6 (C.D. Cal. Apr. 5, 2018).[4]  Here, as in *Lightpath*, "Plaintiff is the sole basis for any contact Defendants had in the state."  The Seidel Defendants did not seek out Plaintiff, but rather they had been introduced to him by a third party, over email, at Plaintiff's request.  And the negotiations and contract formation were by email and phone.  This simply is not enough to show that Plaintiff's alleged harms arose in any way from California-related activities.  (Seidel Decl. at ¶¶ 13, 16-20.)

---

[3] *See Boschetto v. Hansing*, 539 F.3d 1011, 1017 (9th Cir. 2008) ("lone transaction for the sale of one item does not establish that the Defendants purposefully availed themselves of the privilege of doing business in California."); *Moore v. ANG Transp. Inc.*, No. 218CV02919WBSKJN, 2019 WL 2869110, at *3 (E.D. Cal. July 3, 2019) (where defendant sold and shipped a tractor to plaintiff in California, that "intentional act" was a "one-shot" affair that created no ongoing obligations and did not establish personal jurisdiction); *Boot Hill Biofuels, LLC v. Vitakem Nutraceutical, Inc.*, No. CV101215GHKFFMX, 2010 WL 11595730, at *2–3 (C.D. Cal. June 16, 2010) (no personal jurisdiction where claims involved a contract for products to be delivered to California, but contemplated no "continuing relationship . . . beyond this single purchase").

[4] A court does not need to analyze the second prong of the specific-jurisdiction inquiry where, as here, Plaintiff cannot satisfy the first prong.  *See Lightpath Capital*, 2018 WL 5905387, at *5–6.

**MOTION TO DISMISS**

### c. The Exercise of Personal Jurisdiction Over the Seidel Defendants Would Be Unreasonable.

Jurisdiction may not be exercised reasonably where, as here, "under the totality of the circumstances the defendant could [not] reasonably anticipate being called upon to present a defense in a distant forum." *Monster Energy Co. v. Cycle Locators Inc*., No. EDCV1800050JGBKKX, 2018 WL 6431009, at *5–6 (C.D. Cal. June 25, 2018). The Seidel Defendants' contacts with California are minimal and incidental and they have not purposefully interjected themselves into this state. They do not market or advertise at all, let alone in a manner that targets California, and they do not actively seek out California art collectors. *See id.* at *5. (*See also* Seidel Decl. at ¶¶ 5-6.) Indeed, the Seidel Defendants did not seek out Plaintiff's business; rather, this deal arose out of a word-of-mouth connection by a third-party. (Seidel Decl. at ¶ 13; Compl. at ¶ 4.) *See Miller v. Head USA, Inc.*, No. SACV161696DOCJCGX, 2016 WL 10570274, at *4 (C.D. Cal. Dec. 16, 2016) (no personal jurisdiction even assuming contacts constituted purposeful availment where they were not the "but for" cause of plaintiffs' alleged injury).

Because the Seidel Defendants have no California presence, the burden on them to litigate here would be significant. This one-woman New York-based business has no other employees (*see* Seidel Decl. at ¶¶ 1-4), and "a trial which occurs on the opposite side of the country would likely temporarily cripple its operations." *Id.* (second factor weighed in favor of defendant given the hardship a trial would impose on a small company with eight employees and no roots in California). Plaintiff, in contrast, is an executive at a multimedia conglomerate headquartered in New York. (*See* Compl. at ¶ 1; *see also* https://www.nbcunicareers.com/all-locations (stating that 30 Rockefeller Center in New York City is the "corporate headquarters" for NBCUniversal).) There can be no question that New York is an adequate and equally—indeed, perhaps more—efficient forum, where most of the witnesses and documents are located there, and so discovery will be centered

there.  (*See* Seidel Decl. at ¶ 1, 4, 9-10 (explaining that the Seidel Defendants and their records are in New York, as is a key witness, Julian Weissman).)

And New York has a far stronger interest in adjudicating this dispute, given its role at the center of the global art market and its "overwhelming interest in preserving the integrity of" that market.  *See Reif v. Nagy*, 61 Misc. 3d 319, 323, 80 N.Y.S.3d 629, 632 (N.Y. Sup. Ct. 2018), *aff'd as modified*, 175 A.D.3d 107, 106 N.Y.S.3d 5 (1st Dep't 2019); *see also Solomon R. Guggenheim Found. v. Lubell*, 77 N.Y.2d 311, 320, 569 N.E.2d 426 (N.Y. 1991) (noting that New York's case law governing art disputes is shaped by the state's "worldwide reputation as a preeminent cultural center").  That interest is paramount here, where the Work is part of a larger scandal involving a New York-based forgery ring that rocked the New York art market and brought down one of New York's most prominent art galleries, and New York has already served as the forum for nearly a dozen criminal and civil actions arising out of that forgery ring.  *See, e.g.*, *United States v. Glafira Rosales*, No. 13-cr-00518 (KPF); *Martin Hilti Family Trust v. Knoedler Gallery, LLC et al.*, No. 13 Civ. 657 (PGG) (HBP); *Fertitta v. Knoedler Gallery, LLC et al.*, No. 14–CV–2259 (JPO); *De Sole v. Knoedler Gallery, LLC et al.*, No. 12 Civ. 2313 (PGG)(HBP); *Howard v. Freedman*, 12 Civ. 5263 (PGG) (HBP).  While "California may be more convenient for Plaintiff," the "totality of the circumstances" indicate that the exercise of jurisdiction over the Seidel Defendants is not reasonable.  *Monster Energy Co.*, 2018 WL 6431009, at *5-6.

**B.   ALTERNATIVELY, THIS CASE SHOULD BE TRANSFERRED TO THE SOUTHERN DISTRICT OF NEW YORK**

This Court "is not required to determine that it has personal jurisdiction over the defendants before exercising its discretion to transfer a case to the appropriate venue rather than dismiss it outright."  *Rodriguez v. California*, No. 217CV0198JAMKJNP, 2017 WL 1740986, at *3 (E.D. Cal. May 4, 2017).  Venue is unquestionably proper in the Southern District of New York, where the Seidel Defendants reside; Defendants and the most critical witnesses are located there; and the parties' only in-person dealings occurred in Manhattan.  *See* 28 U.S.C. § 1391(b) (providing that venue is proper in a district "in which any

defendant resides, if all defendants are residents of the State in which the district is located," or in any district "in which a substantial part of the events . . . giving rise to the claim occurred"). Accordingly, regardless of the jurisdictional analysis, the action should be transferred to the Southern District of New York under 28 U.S.C. §1404(a), giving this Court "broad discretion to transfer a case to another district where venue is also proper." *Rubio v. Monsanto Co.*, 181 F. Supp. 3d 746, 759 (C.D. Cal. 2016).

The purpose of § 1404(a) is to "prevent the waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *Am. Trading Int'l, Inc. v. MCF Operating, LLC*, No. CV 19-5851-JFW(PLAX), 2019 WL 6139113, at *2 (C.D. Cal. Sept. 24, 2019) (internal citations omitted). Courts adjudicate motions for transfer of venue "according to an individualized, case-by-case consideration of convenience and fairness." *Id*. "A district court considering a § 1404(a) motion must evaluate both the convenience of the parties and the various public interest considerations and decide whether, on balance, a transfer would serve the convenience of parties and witnesses and otherwise promote the interest of justice . . . ." *GemCap Lending I, LLC v. Bateman*, No. CV17-3305 PSG GJSX, 2017 WL 8183191, at *3 (C.D. Cal. July 17, 2017) (internal quotation marks, citations and alterations omitted). And here, New York is far more convenient for parties and non-parties alike, and the interests of justice will be better served if the case is tried there.

### 1.   <u>New York Is More Convenient for the Parties.</u>

The parties' conduct regarding the sale occurred almost entirely in New York, where the Work was located at the time of the transaction; where the Work was consigned from another New York dealer; where the parties arranged their only in-person meeting with regard to the transaction; and where Plaintiff viewed the Work. Beyond that one meeting, the transaction was finalized by correspondence and telephone. (Seidel Decl. at ¶¶ 11-18.) While Plaintiff may be a California resident, he is an executive at a multimedia conglomerate headquartered in New York. The Seidel Defendants, in contrast, have very little contact with California; and given that Susan Seidel Inc. is a one-woman operation,

**MOTION TO DISMISS**

Ms. Seidel and her business would suffer considerable disruption if they are forced to litigate this case across the country from their home.  (*See id.* at ¶¶ 1-5.)

### 2.   New York is More Convenient for the Critical Non-Party Witnesses.

"The convenience of witnesses is often the most important factor in determining whether a transfer under § 1404 is appropriate." *Calkins v. Sanford*, No. CV0801952MMMRZX, 2008 WL 11336463, at *11 (C.D. Cal. May 12, 2008).  Here, essentially every non-party witness is within the greater New York area. *See Metz v. U.S. Life Ins. Co. in City of New York*, 674 F. Supp. 2d 1141, 1148 (C.D. Cal. 2009) ("because the majority of potential witnesses are in the New York area, and the only party or witness known to date that is located in California is Plaintiff, the convenience to witnesses weighs in favor of transferring this action to the Southern District of New York.").  Indeed, as far as the Seidel Defendants are aware, there is not a single potential non-party witness who is located in California, or for whom California would be a more convenient forum than New York.

At the top of this list is Weissman, who is in failing health.  (Seidel Decl. at ¶ 10.) Indeed, his role in this transaction is so central that he likely is a necessary party—but he would not be subject to compulsory process in California.  Ruth Fine, the compiler of the Rothko catalogue raisonné referenced repeatedly in Plaintiff's Complaint (*see, e.g.*, Compl. at ¶¶ 6, 17), is in her late 70s and she is based in the Philadelphia area.  She would be subject to the subpoena power of a New York—but not a California—court.  Not to mention that New York would be far more convenient for her than California.  Similarly, New York is the home base of the FBI agents who were involved in investigating the forgery ring that Plaintiff claims created this Work and many others.  Their testimony will likely be important to this case, not only to provide general information regarding their investigation into the New York-based forgery ring, but also with respect to this Work in particular.

Where the parties have no control over these critical witnesses, some of whom may be unwilling to cooperate, they can be compelled to testify at a trial in New York, if

12

**MOTION TO DISMISS**

necessary.  *See Painter's Dist. Council No. 30 Health & Welfare Fund v. Amgen, Inc.*, No. CV07-3880PSGAGRX, 2007 WL 4144892, at *6 (C.D. Cal. Nov. 13, 2007) ("Because the fact witnesses are outside the geographic reach of this district's subpoena power, Amgen may not have access to these witnesses at trial.  If the case is transferred, the Northern District of Illinois will have subpoena power over the witnesses who reside within that district").  But these witnesses would not be subject to this Court's trial-subpoena power.

### 3.    The Interests of Justice Favor Transfer to New York.

Litigating in New York will be more cost-effective and efficient for all involved, and scheduling issues will be simplified, if Defendants and key witnesses need not travel across the country to participate in proceedings.  Likewise, key documents, including documents from the Seidel Defendants, Frankfurt, and Weissman, are located in and thus will be more easily accessible from New York.  (*See* Seidel Decl. at ¶¶ 4, 10.)  It simply is unreasonable to hale the Seidel Defendants into this Court given their lack of any meaningful relationship with California, where the events that underpin Plaintiff's claims—in particular, the formation of the sale contract—all occurred in New York.  *See Peace v. Parascript Mgmt., Inc.*, No. CV 12-09663 JGB (EX), 2013 WL 12137565, at *4 (C.D. Cal. Mar. 18, 2013) (the "interests of justice" analysis includes an examination of the parties' respective contacts with the forum, as well as contacts relating to the causes of action at issue).

While courts weighing a transfer may consider which court will be most familiar with the law governing a case, that factor is generally given "little weight" in cases "where no complex questions of foreign law are involved."  *See Done! Ventures, LLC v. Gen. Elec. Co.*, No. CV1004420SJOJCX, 2011 WL 13217220, at *8 (C.D. Cal. Jan. 21, 2011).  Here, Plaintiff's claims (for fraud, breach of warranty, negligent misrepresentation, and rescission) arise out of a contract that, in both New York and California, is governed by the Uniform Commercial Code.  While a choice-of-law analysis is premature at this early stage, it seems unlikely that this case will raise "novel or complex issues of law" that should only be decided by a California or New York court.  *See Miyauchi Corp. v. Oswald*, No. SACV120594DOCJPRX, 2012 WL 12952741, at *5 (C.D. Cal. Oct. 29, 2012)

13

(holding this factor to be "insignificant"); *see also Stanbury Elec. Eng'g, LLC v. Energy Prod., Inc*., No. C16-0362JLR, 2016 WL 3255003, at *3–4 (W.D. Wash. June 13, 2016) (this factor was neutral in transfer analysis where claims would be governed by Uniform Commercial Code, and "to the extent state contract law is applicable, federal courts are equally equipped to apply distant state laws when the law is not complex").

Finally, New York's prominent role in the global art ecosystem means that New York has a compelling interest in protecting the integrity of its own art market by regulating the conduct of, and adjudicating disputes regarding New York art transactions and New York art professionals (including, of course, Ms. Seidel, Mr. Frankfurt, and Mr. Weissman). Indeed, the Southern District of New York has already been the forum for nearly a dozen cases arising out of the very same forgery ring that Plaintiff claims created the Work at issue here, and transferring this case to the Southern District of New York will ensure that it will be litigated against the backdrop of those related cases.

## IV.   <u>CONCLUSION</u>

New York has the most significant connections to this dispute. Defendants and critical witnesses are located in New York. And the most crucial events related to this dispute occurred there. The Seidel Defendants respectfully request that this Court dismiss the claims against the Seidel Defendants for lack of personal jurisdiction. Alternatively, the Seidel Defendants respectfully request that this case be transferred to the Southern District of New York.

**MOTION TO DISMISS**

1

2   Dated:  January 24, 2020

3

4                       Respectfully submitted,

**GROSSMAN LLP**

By: _____
Judd B. Grossman (*pro hac vice*)
Sarah E. Schuster (*pro hac vice*)

**COHEN WILLIAMS LLP**
Marc S. Williams
Brittany L. Lane

Attorneys for Defendants Susan Seidel and
Susan Seidel Inc.