Judd B. Grossman
jgrossman@grossmanllp.com
Sarah E. Schuster
sschuster@grossmanllp.com
**GROSSMAN LLP**
745 Fifth Ave, 5th Floor
New York, NY 10151
Telephone:  (646) 770-7445
Facsimile:   (646) 417-7997
***Admitted Pro Hac Vice***

Marc S. Williams (Bar No. 198913)
mwilliams@cohen-williams.com
Brittany L. Lane (Bar No. 323440)
blane@cohen-williams.com
**COHEN WILLIAMS LLP**
724 South Spring Street, 9th Floor
Los Angeles, CA 90014
Telephone:  (213) 232-5160
Facsimile:   (213) 232-5167

Attorneys for Defendants,
SUSAN SEIDEL and SUSAN SEIDEL INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RON MEYER,<br><br>                    Plaintiff,<br><br>          v.<br><br>SUSAN SEIDEL, SUSAN SEIDEL INC.,<br>JAMIE FRANKFORT, and DOES 1<br>through 5,<br><br>                    Defendants. | Case No. 2:19-cv-09786-DMG-JC<br><br>**SEIDEL DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR, ALTERNATIVELY, TO TRANSFER VENUE; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Judge:           Hon. Dolly M. Gee<br>Hearing Date:  April 10, 2020<br>Hearing Time: 9:30 a.m. |

---

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ......................................................................... 1

LEGAL ARGUMENT ....................................................................................... 2

I.    PLAINTIFF HAS NOT MADE A *PRIMA FACIE*
JURISDICTIONAL SHOWING UNDER THE CORRECT
"PURPOSEFUL AVAILMENT" STANDARD. ........................................ 2

    A.    The "Purposeful Availment" Test for Contract Cases
Governs; the "Purposeful Direction" Standard for Tort
Cases Is Inapplicable. .................................................................. 2

    B.    Plaintiff Cannot Satisfy the "Purposeful Availment" Test. ......... 5

    C.    Plaintiff Cannot Lump the Seidel Defendants Together
With their Co-Defendant for Purposes of Establishing
Jurisdiction. ............................................................................... 10

    D.    The Exercise of Jurisdiction Over the Seidel Defendants
Is Unreasonable. ........................................................................ 12

II.   ALTERNATIVELY, THE COURT SHOULD TRANSFER THIS
CASE TO THE SOUTHERN DISTRICT OF NEW YORK. ...................... 13

    A.    Critical Non-Party Witnesses, Including a Likely Third-
Party Defendant, Are Within the Subpoena Power of
Courts In New York, But Not California. ..................................... 13

    B.    New York's Strong Interests in this Case Favor Transfer
to New York. .............................................................................. 16

CONCLUSION ............................................................................................... 17

# TABLE OF AUTHORITIES

Page(s)

CASES

*Alcon Entm't, LLC v. Automobiles Peugeot SA*
  No. CV1900245CJCAFMX, 2019 WL 7841858 (C.D. Cal. Oct. 30, 2019) ..................... 4

*Artas Film & TV Prods. GMBH v. Shepherd*
  959 F.2d 239 (9th Cir. 1992)........................................................................ 6

*Bay Gulf Trading Co. v. M/V DIRK DANOS*
  No. CIV. A. 95-1799, 1996 WL 175000 (E.D. La. Apr. 12, 1996)................................. 15

*Boot Hill Biofuels, LLC v. Vitakem Nutraceutical, Inc*.
  No. CV101215GHKFFMX, 2010 WL 11595730 (C.D. Cal. June 16, 2010)................... 3

*Boschetto v. Hansing*
  539 F.3d 1011 (9th Cir. 2008) ..................................................................... 4

*Bruni Media, LLC v. AAPM Media Grp., LLC*
  No. 8:18-CV-01284(JLS)(KES), 2018 WL 7448916 (C.D. Cal. Dec. 4, 2018) ............... 4

*Buckeye Boiler Co. v. Superior Court of Los Angeles Cty*.
  71 Cal. 2d 893 P.2d 57 (1969) .................................................................... 5

*Burger King Corp. v. Rudzewicz*
  471 U.S. 462 S. Ct. 2174, 85 L.Ed. 2d 528 (1985)........................................... 8

*Calkins v. Sanford*
  No. CV0801952MMMRZX, 2008 WL 11336463 (C.D. Cal. May 12, 2008)................... 4

*Cottle v. W. Skyways Inc.*
  No. 117CV00049DADBAM, 2017 WL 1383277 (E.D. Cal. Apr. 18, 2017)........ 3, 6, 8, 9

*De Sole v. Knoedler Gallery, LLC et al.*
  No. 12 Civ. 2313 (PGG)(HBP) .................................................................... 16

*Dynamic Software Servs. v. Cyberbest Tech., Inc.*
  No. C-13-04217 DMR, 2014 WL 3373924 (N.D. Cal. July 9, 2014) ........................ 6, 7, 8

*Fertitta v. Knoedler Gallery, LLC et al*.
  No. 14–CV–2259 (JPO)............................................................................ 16

*Galliani v. Citimortgage, Inc*.
  No. 2:12-CV-00411-KJM, 2013 WL 101411 (E.D. Cal. Jan. 7, 2013) ......................... 13

*GemCap Lending I, LLC v. Bateman*
  No. CV17-3305 PSG GJSX, 2017 WL 8183191 (C.D. Cal. July 17, 2017).................... 13

*Gray & Co. v. Firstenberg Mach. Co.*
  913 F.2d 758 (9th Cir. 1990).......................................................................................... 8

*Helicopteros Nacionales de Colombia, S.A. v. Hall*
  466 U.S. 408 (1984).......................................................................................................... 8

*HK China Grp., Inc. v. Beijing United Auto. & Motorcycle Mfg. Corp*.
  417 F. App'x 664 (9th Cir. 2011) .................................................................................... 4

*Howard v. Freedman*
  12 Civ. 5263 (PGG)(HBP) .............................................................................................. 16

*In re Boon Glob. Ltd*.
  923 F.3d 643 (9th Cir. 2019)........................................................................................... 11

*IPS Shared Tech. Servs., Inc. v. Overwatch Sys., Ltd*.
  No. C-14-1112 EMC, 2014 WL 2110341 (N.D. Cal. May 20, 2014)............................. 10

*LocusPoint Networks, LLC v. D.T.V., LLC*
  No. 3:14-CV-01278-JSC, 2014 WL 3836792 (N.D. Cal. Aug. 1, 2014) ......................... 8

*Martin Hilti Family Trust v. Knoedler Gallery, LLC et al*.
  No. 13 Civ. 657 (PGG) (HBP) ....................................................................................... 16

*Mavrix Photo, Inc. v. Brand Techs., Inc*.
  647 F.3d 1218 (9th Cir. 2011) .......................................................................................... 5

*Metz v. U.S. Life Ins. Co. in City of New York*
  674 F. Supp. 2d 1141 (C.D. Cal. 2009) .......................................................................... 16

*Moore v. ANG Transp. Inc*.
  No. 2:18-CV-02919 (WBS)(KJN), 2019 WL 2869110 (E.D. Cal. July 3, 2019) ............. 2

*Multistate Legal Studies, Inc. v. Marino*
  No. CV 96-5118 ABC RNBX, 1996 WL 786124 (C.D. Cal. Nov. 4, 1996) .................. 13

*Nanoexa Corp. v. Univ. of Chicago*
  No. 10-CV-2631-LHK, 2010 WL 4236855 (N.D. Cal. Oct. 21, 2010)............................ 6

iii

*Navigators Specialty Ins. Co. v. Kapiolani Residential, LLC*
   No. 17-CV-06575-SI, 2018 WL 1426608 (N.D. Cal. Mar. 22, 2018) ...............................3

*NuVasive, Inc. v. Renaissance Surgical Ctr.*
   No. 11-CV-00765 BEN MDD, 2011 WL 3021896 (S.D. Cal. July 22, 2011)...................7

*Panthera Railcar LLC v. Kasgro Rail Corp*.
   No. C 12-06458 SI, 2013 WL 1996318 (N.D. Cal. May 13, 2013) ..................................4

*Parsons v. Fisher*
   No. 13-CV-06438 (DMG)(JCX), 2014 WL 12560789 (C.D. Cal. Mar. 25, 2014)........6, 9

*Rapiscan Sys., Inc. v. Garnett*
   No. CV 18-10780 PA (EX), 2019 WL 1883911 (C.D. Cal. Mar. 8, 2019)...................2, 3

*Raynes v. Davis*
   No. CV 05-6740ABCCTX, 2007 WL 4145102 (C.D. Cal. Nov. 19, 2007) ...................15

*Russeck Fine Art Grp., Inc. v. Theodore B. Donson, Ltd.*
   20 Misc. 3d 1119(A), 867 N.Y.S.2d 20 (Sup. Ct. N.Y. Co. 2008).....................................9

*Sarkar v. Malik India Int'l Bar & Rest. Inc.*
   No. C06-2746 MEJ, 2006 WL 3201308 (N.D. Cal. Nov. 6, 2006)..................................12

*Schwarzenegger v. Fred Martin Motor Co*.
   374 F.3d 797 (9th Cir. 2004).............................................................................................5

*Seldin v. HSN, Inc*.
   No. 17-CV-2183-AJB-MDD, 2018 WL 3570308 (S.D. Cal. July 25, 2018)..................10

*Sher v. Johnson*
   911 F.2d 1357 (9th Cir. 1990) ...........................................................................................8

*Skidmore Energy, Inc. v. Maghreb Petroleum Expl., S.A*.
   337 F. App'x 706 (9th Cir. 2009) .......................................................................................5

*Strausbaugh v. Medtronic, Inc*.
   No. CV 13-8249 SVW-EX, 2014 WL 12696523 (C.D. Cal. Aug. 8, 2014) ...................14

*Strickland v. Aramark Unif. & Career Apparel, LLC*
   No. 214CV09851CASJEMX, 2015 WL 13742905 (C.D. Cal. May 1, 2015) ................13

*United States v. Glafira Rosales*
   No. 13-cr-00518 (KPF) ....................................................................................................16

**REPLY IN SUPPORT OF MOTION TO DISMISS**

*Wickline v. United Micronesia Dev. Ass'n, Inc.*
   No. C 14-00192 SI, 2014 WL 2938713 (N.D. Cal. June 30, 2014) ..................................4

*Zeiger v. WellPet LLC*
   304 F. Supp. 3d 837 (N.D. Cal. 2018) .............................................................................11

*Zerez Holdings Corp. v. Tarpon Bay Partners, LLC*
   No. 2:17-CV-00029-TLN-DB, 2018 WL 402238 (E.D. Cal. Jan. 12, 2018)..................16

STATUTES

28 U.S.C. § 1404(a) .............................................................................................................1

RULES

Fed. R. Civ. Proc. Rule 12(b)(2)......................................................................................1, 12

**REPLY IN SUPPORT OF MOTION TO DISMISS**

## **PRELIMINARY STATEMENT**

Plaintiff asks this Court to exercise personal jurisdiction over the New York Seidel Defendants on the basis of a one-off sale of a painting in New York, initiated by Plaintiff and his art advisor, negotiated in New York or remotely, involving no ongoing commitments between the parties.  Plaintiff's arguments suffer from several analytical errors, including application of the wrong jurisdictional legal standard, and the improper aggregation of the Seidel Defendants' alleged conduct with that of a co-Defendant. Properly applied, Ninth Circuit precedent dictates that there is no personal jurisdiction over the Seidel Defendants here, both because they never purposely availed themselves of the privilege of doing business in California, and because the exercise of jurisdiction under the circumstances would be unreasonable.

In any case, the most convenient venue with the more significant ties to this dispute is New York—where all Defendants and the most critical non-party witness reside—and therefore this lawsuit should be transferred under 28 U.S.C. § 1404(a) to the Southern District of New York.  Most critically, several key non-party witnesses—including the owner of the painting at the time these Defendants brokered the sale, who will be impleaded as a third-party defendant if this case proceeds past the pleading stage—are outside this Court's trial-subpoena power, but they could be compelled to appear and to testify in the Southern District of New York.  And given New York's strong connections to, and interests in this case—not to mention that Plaintiff's claims are based on an alleged New York-based forgery ring (not involving these Defendants) that has spawned numerous related litigations in New York—transferring this case to New York would serve the interests of justice.

This case has no connection to California, other than the fact that Plaintiff happens to live here.  The Complaint should be dismissed under Rule 12(b)(2) of the Federal Rules for lack of personal jurisdiction, or, alternatively, this Court should transfer the case under 28 U.S.C. § 1404(a) to the Southern District of New York.

## LEGAL ARGUMENT

**I.    PLAINTIFF HAS NOT MADE A *PRIMA FACIE*
JURISDICTIONAL SHOWING UNDER THE
CORRECT "PURPOSEFUL AVAILMENT" STANDARD.**

Plaintiff's proffered jurisdictional analysis misapplies governing legal principles in several respects.   Under a proper application of the "purposeful availment" standard governing contract-based cases like this one, Plaintiff's factual allegations are insufficient to support personal jurisdiction over the Seidel Defendants, and the Complaint against them should be dismissed.

### A.    The "Purposeful Availment" Test for Contract Cases Governs; the "Purposeful Direction" Standard for Tort Cases Is Inapplicable.

This case at its core sounds primarily in contract because all the claims—including Plaintiff's flimsy and time-barred fraud claims—are based on the same representations in the purported agreement giving rise to the alleged breach.  And in such contract cases, the jurisdictional question depends on whether the Seidel Defendants "purposely availed themselves" of the benefits of doing business in California.  *See Moore v. ANG Transp. Inc.*, No. 2:18-CV-02919 (WBS)(KJN), 2019 WL 2869110, at *2 (E.D. Cal. July 3, 2019); *Rapiscan Sys., Inc. v. Garnett*, No. CV 18-10780 PA (EX), 2019 WL 1883911, at *4 (C.D. Cal. Mar. 8, 2019) ("purposeful availment" analysis, used for cases sounding in contract, asks whether defendant has "purposefully avail[ed] himself of the privilege of conducting activities in the forum by deliberately engaging in significant activities within a State or creating continuing obligations between himself and the residents of the forum").  Apparently recognizing that the Seidel Defendants did not intentionally avail themselves of doing business in California merely by selling a painting to a buyer who happened to live here, Plaintiff hardly tries to satisfy the correct purposeful-availment standard.

The Court should disregard Plaintiff's vague, unsupported claims that the Seidel Defendants have "transacted substantial business in or related to California," and have "sometimes conducted [their] business in . . . California."  (Compl. at ¶ 2.)  Plaintiff also falls short on the law, presenting no case law of his own under the purposeful-availment

2

test; instead he simply tries to distinguish the cases that the Seidel Defendants cited in their opening brief, all holding that there is *no* personal jurisdiction in cases like this. Plaintiff simply states, conclusorily, that this case involves "more significant California contacts," that the Seidel Defendants' conduct was "certainly" aimed at California, and that there is "far more in the record here" than making a contract. But where virtually all the Seidel Defendants' conduct regarding the underlying transaction—including Plaintiff's in-person viewing of the painting at the Seidel Defendants' New York office (*see* Seidel Supp. Decl. at ¶ 4)—was centered outside California, in New York, Plaintiff comes nowhere close to meeting the purposeful-availment standard.[1]

Plaintiff knows he cannot satisfy the correct standard, which explains why he asks this Court to instead apply the "purposeful direction" analysis reserved for tort cases. These tests are materially different, which of course explains Plaintiff's attempted misdirection. Under the "effects" test used in tort cases, unlike the purposeful-availment test, jurisdiction is proper if the defendant has "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Rapiscan*, 2019 WL 1883911, at *4. To be sure, Plaintiff cannot satisfy this test either, where the Seidel Defendants did not expressly aim their conduct at California when they negotiated and sold a painting from New York, where Plaintiff travelled to view the work in connection with the transaction. But in any case, this test simply does not apply in this contract-based case.

---

[1] *See Boot Hill Biofuels, LLC v. Vitakem Nutraceutical, Inc.*, No. CV101215GHKFFMX, 2010 WL 11595730, at *3 (C.D. Cal. June 16, 2010) (no jurisdiction in case involving single transaction, initiated by plaintiff, who agreed to purchase nutritional supplements to be delivered to California); *Navigators Specialty Ins. Co. v. Kapiolani Residential, LLC*, No. 17-CV-06575-SI, 2018 WL 1426608, at *6 (N.D. Cal. Mar. 22, 2018) (no jurisdiction over defendants who had purchased a single insurance policy from a California business and did not assume any ongoing obligations in California); *Cottle v. W. Skyways Inc.*, No. 117CV00049DADBAM, 2017 WL 1383277, at *7 (E.D. Cal. Apr. 18, 2017) (no personal jurisdiction over a company that agreed to manufacture and install a plane engine and then return the plane to California).

**REPLY IN SUPPORT OF MOTION TO DISMISS**

Plaintiff asserts, without citing any legal authority, that this other test applies because this case "is manifestly a case sounding in tort, rather than contract." (Opp. Br. at 11.) Plaintiff is wrong. The claims for breach of warranty and rescission on their face are grounded firmly in contract law. And as for Plaintiff's other two claims—negligent misrepresentation and fraud—courts in this Circuit have recognized that, where Plaintiff has asserted both tort and contract claims, the case sounds in contract—and thus the "purposeful availment" test applies—where, as here, the tort claims "arise out of the parties' contractual relationship." *Panthera Railcar LLC v. Kasgro Rail Corp.*, No. C 12-06458 SI, 2013 WL 1996318, at *4 (N.D. Cal. May 13, 2013); *HK China Grp., Inc. v. Beijing United Auto. & Motorcycle Mfg. Corp.*, 417 F. App'x 664, 665 (9th Cir. 2011) (jurisdictional questions analyzed under the "purposeful availment" standard where lawsuit including breach-of-contract claim and a fraud claim "sound[s] primarily in contract" because "the alleged fraud is merely the representations in the contract that gave rise to the breach"); *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008) (dismissing for lack of jurisdiction buyer's claims for "violation of the California Consumer Protection Act; breach of contract; misrepresentation; and fraud," after concluding that the case sounded primarily in contract and therefore the "purposeful availment" standard applied).[2] And once again, here all the claims sound in contract where they are based on the very same statements contained in the invoice governing the sale of the painting from New York.

The decision in *Bruni Media, LLC v. AAPM Media Grp., LLC*, No. 8:18-CV-01284(JLS)(KES), 2018 WL 7448916, at *4 (C.D. Cal. Dec. 4, 2018), is instructive, where

---

[2] *See also Alcon Entm't, LLC v. Automobiles Peugeot SA*, No. CV1900245CJCAFMX, 2019 WL 7841858, at *5 (C.D. Cal. Oct. 30, 2019) (applying purposeful-availment analysis where "alleged fraud is intertwined with the parties' duties under the contract"); *Calkins v. Sanford*, No. CV0801952MMMRZX, 2008 WL 11336463, at *4 (C.D. Cal. May 12, 2008) (applying purposeful-availment standard where plaintiff asserted breach-of-contract claim plus "two causes of action sounding in tort—his fraudulent misrepresentation and conversion claims," and the tort claims were "clearly based on the parties' contractual relationship"); *Wickline v. United Micronesia Dev. Ass'n, Inc.*, No. C 14-00192 SI, 2014 WL 2938713, at *6 (N.D. Cal. June 30, 2014) (applying purposeful-availment standard where fraud and conversion claims arose out of the contractual relationship).

the plaintiff asserted "both contract and tort claims[.]"  The court there determined that the "case as a whole sounds in contract because the tort claims—fraud and negligent misrepresentation—arise out of Defendants' [alleged] conduct in the creation and performance of the [contract] at issue." *Id.* at *4 (internal alterations omitted).  Thus, "a purposeful availment analysis [was] appropriate." *Id.*  Similarly here, Plaintiff's fraud and negligent-misrepresentation claims arise directly out of, and are intertwined with, Plaintiff's allegations regarding the formation and performance of a sale contract.  Indeed, in Plaintiff's own words, "Seidel's written representations"—*i.e.*, the paperwork memorializing the sale—are "the essence of the case."[3]  (Opp. Br. at 15.)  Accordingly, under a well-established body of case law in this Circuit, this case sounds in contract and thus the "purposeful availment" standard—*not* the purposeful direction test used for tort cases—governs.[4]

## B.  Plaintiff Cannot Satisfy the "Purposeful Availment" Test.

After stripping away Plaintiff's conclusory allegations concerning the underlying transaction's superficial connections to California, Plaintiff's remaining arguments fall woefully short of satisfying the governing jurisdictional standard under settled Ninth Circuit precedent.

"To have purposefully availed itself of the privilege of doing business in the forum, a defendant must have performed some type of affirmative conduct which allows or

---

[3] Plaintiff's dramatic comparison of the Painting to a "bomb" is inapt as well as hyperbolic.  The case on which Plaintiff relies, involving personal injuries caused by an "exploding boiler," examines personal jurisdiction in the context of product-liability tort claims against an out-of-state manufacturer, and sheds no particular light on the purposeful availment analysis to be applied in this contract dispute.  *See Buckeye Boiler Co. v. Superior Court of Los Angeles Cty.*, 71 Cal. 2d 893, 900, 458 P.2d 57 (1969).

[4] The cases Plaintiff cites rely on the tort standard, and therefore are inapposite.  *See, e.g., Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011) ("copyright infringement, a tort-like cause of action"); *Skidmore Energy, Inc. v. Maghreb Petroleum Expl., S.A.*, 337 F. App'x 706, 707 (9th Cir. 2009) (affirming *dismissal* of claims due to lack of personal jurisdiction under effects test); *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 803 (9th Cir. 2004) (unauthorized use of likeness).

promotes the transaction of business within the forum state." *Parsons v. Fisher*, No. 13-CV-06438 (DMG)(JCX), 2014 WL 12560789, at *2 (C.D. Cal. Mar. 25, 2014) (internal citations omitted).  Courts evaluate this question through a "highly realistic approach" that examines factors including the parties' "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Id.*  And when it comes to the parties' negotiations and course of dealing, a purposeful-availment analysis "depends in part on which party initiated contact." *Cottle v. W. Skyways Inc.*, No. 117CV00049DADBAM, 2017 WL 1383277, at *7 (E.D. Cal. Apr. 18, 2017).  And here, "Plaintiff is the party that actively sought out and communicated its intent to do business with [the defendants]," and the Seidel Defendants merely responded to the plaintiff's communications.[5]

Plaintiff candidly acknowledges that the Seidel Defendants did not take any affirmative act to initiate the dealings, but that *Plaintiff's* art advisor initially told him about the opportunity to acquire the Painting.  Plaintiff then traveled to New York to view the Painting, and he moved the deal forward by communicating with Seidel in New York about his desire to proceed with the purchase.  (*See* Compl. at ¶ 4; Meyer Decl. at ¶¶ 4-6; Seidel Decl. at ¶ 13, 17; Opp. Br. at 10 (stating that the allegedly fraudulent transaction at issue "began with Frankfurt"); *see also id.* at 21 (stating that Frankfurt's initial representations to Plaintiff "set the entire scheme in motion").)  Where, as here, Plaintiff initiated the transaction, courts in this Circuit are loathe to uphold specific personal jurisdiction.

---

[5] *See Nanoexa Corp. v. Univ. of Chicago*, No. 10-CV-2631-LHK, 2010 WL 4236855, at *5 (N.D. Cal. Oct. 21, 2010) (no purposeful availment where "Plaintiff's own allegations paint a vivid picture of Plaintiff's efforts in seeking out [Defendant] in Chicago," and Defendants simply "returned Plaintiff's phone calls or responded to Plaintiff's e-mails"); *Artas Film & TV Prods. GMBH v. Shepherd*, 959 F.2d 239 (9th Cir. 1992) ("[a]bsent any other affirmative act by the defendant, we have been reluctant to conclude that a defendant has purposefully availed himself of the privilege of conducting activities in the forum, even when the defendant has ultimately agreed to enter into a contractual relationship with the forum party"); *Dynamic Software Servs. v. Cyberbest Tech., Inc.*, No. C-13-04217 DMR, 2014 WL 3373924, at *8 (N.D. Cal. July 9, 2014) (no jurisdiction where "it was Plaintiff who solicited business from Defendant").

**REPLY IN SUPPORT OF MOTION TO DISMISS**

Plaintiff overstates the significance of the allegation that the Seidel Defendants used a telephone to communicate with Frankfurt regarding the transaction, and that they used the postal mail to send the invoice memorializing the sale.  (*See* Opp. Br. at 7, 9-10, 12, 14-17.) Courts have been clear that "ordinarily use of the mails, telephone, or other international communications simply do not qualify as purposeful activity invoking the benefits and protection of the forum state." *Dynamic Software*, 2014 WL 3373924, at *9; *NuVasive, Inc. v. Renaissance Surgical Ctr.*, No. 11-CV-00765 BEN MDD, 2011 WL 3021896, at *4 (S.D. Cal. July 22, 2011) ("mere use of interstate mail, telephone or wire services is insufficient to support personal jurisdiction.").

While Plaintiff refers repeatedly to two invoices he received in connection with the Painting's sale (Meyer Decl. at ¶ 8 and Ex. A & B; Opp. Br. at 9, 16, 23), one of those documents is irrelevant to the Seidel Defendants' jurisdictional contacts because—despite Plaintiff's sworn statement—the Seidel Defendants did not create or send the document. Contrary to Plaintiff's sworn statement that "Ms. Seidel sent another invoice to me in California" for a commission on March 19, 2001—eighteen days after the original sale invoice—the Seidel Defendants never sent that second "invoice."  (*See* Seidel Supp. Decl. ¶¶ 5-7.)  Comparing that second invoice to the first invoice, it is clear from the face of that document that it did not come from the Seidel Defendants; among other things, the original invoice is on Susan Seidel, Inc. letterhead with corresponding wiring instructions but no invoice number, while the second invoice has no letterhead or wiring instructions and bears an invoice number.  (*Compare* Meyer Decl. at Ex. A & B).  The Seidel Defendants, as a general rule, sent invoices on letterhead and did not use invoice numbers, and the handwriting on the invoice is not Ms. Seidel's or her then-assistant's.  (*See* Seidel Supp. Decl. ¶¶ 5-7.)  It would have been nonsensical for the Seidel Defendants to separately invoice the buyer for a commission more than two weeks after the sale.  Whoever may have sent this invoice, it was not the Seidel Defendants, and therefore it should be entirely disregarded for purposes of analyzing their jurisdictional contacts with California.

Plaintiff over-emphasizes the import of his payment from a California bank account. (Opp. Br. at 7, 9, 10, 13, 15-17.)  As the Supreme Court held long ago, "absent unusual circumstances, the bank on which a check is drawn is generally of little consequence to the payee and is a matter left to the discretion of the drawer[.]"  *LocusPoint Networks, LLC v. D.T.V., LLC*, No. 3:14-CV-01278-JSC, 2014 WL 3836792, at *6 (N.D. Cal. Aug. 1, 2014) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416–17 (1984)). As such, it is "unilateral activity of another party," and it is "not an appropriate consideration" in a specific-jurisdiction analysis.  *Id.*

It is beside the point that the Seidel Defendants may have known they were dealing with a California buyer (a fact which the Seidel Defendants dispute in any case).  (Opp. Br. at 2, 16-17.)  Courts are clear that simply contracting with a California resident does not constitute purposeful availment for purposes of personal jurisdiction.  *See Parsons*, 2014 WL 12560789, at *2 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478, 105 S. Ct. 2174, 85 L.Ed. 2d 528 (1985) and *Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990)). Likewise, "mere knowledge that the plaintiff is based in the forum state is insufficient to establish purposeful availment."  *Dynamic Software*, 2014 WL 3373924, at *9.  And "foreseeability of injury in the forum does not in itself establish purposeful availment." *Gray & Co. v. Firstenberg Mach. Co.*, 913 F.2d 758, 761 (9th Cir. 1990) (no jurisdiction in Oregon where Oregon buyer approached out-of-state seller, negotiations consisted of a few phone calls, buyer traveled to inspect the item outside Oregon, parties exchanged an invoice and purchase order, and sale contemplated no continuing relationship).

Plaintiff leans too heavily on the fact that the Painting was delivered to California. "[A] defendant does not purposefully avail itself of a forum simply by delivering a product into the state."  *Cottle*, 2017 WL 1383277, at *7 (collecting cases).  And nothing about the contract "required any aspect of performance to occur in California[.]"  *Id.* (delivery to California as a "courtesy" to plaintiff was not purposeful availment).  The Seidel Defendants arranged for delivery of the Painting to California simply because that was Plaintiff's preference.  If Plaintiff had wanted to instead ship the Painting to a freeport in

8

Switzerland for storage (a not uncommon practice among high-end art collectors), then the Seidel Defendants would have obliged. But by doing so, the Seidel Defendants would not have intentionally availed themselves of doing business in Switzerland, just as they did not purposefully avail themselves of California here. *See Russeck Fine Art Grp., Inc. v. Theodore B. Donson, Ltd.*, 20 Misc. 3d 1119(A), 867 N.Y.S.2d 20 (Sup. Ct. N.Y. Co. 2008) (holding, in art dispute, that there was no personal jurisdiction over out-of-state auction house where the auction house "did not enter into a contract . . . to ship the drawing to New York. Rather, [defendant] would have shipped the drawing anywhere in the world. Since [plaintiff] was in New York, [defendant] shipped the drawing to New York."). Beyond delivering the Painting to California, the contemplated transaction was a "one-shot deal" that created no "substantial connections or ongoing obligations in the forum state." *Cottle*, 2017 WL 1383277, at *7; *Parsons*, 2014 WL 12560790, at *2.

In a desperate attempt to salvage jurisdiction, Plaintiff speculates that if he had not discovered the alleged fraud, then "a buyer—probably another Californian—would have unknowingly purchased the fake painting." (Opp. Br. at 5; *see also id.* at 10 (citing the "danger that [Plaintiff] or his heirs would sell the painting to still others living in California"); *id.* at 13 (asserting that the Painting was "certain to cause damages in California and not only to Plaintiff, but also to any subsequent buyer in this state"). This conjecture is belied by the law and the facts. As an initial matter, any such hypothetical transfer would be solely a result of *Plaintiff's* unilateral conduct with some unspecified third-parties. And there is no question that, as a matter of law, unilateral conduct by others besides the Seidel Defendants cannot be a basis for specific jurisdiction over them.

This naked speculation is also factually baseless, where Plaintiff conceals from the Court that he actually took steps before initiating this lawsuit to sell the Painting—not in California, but through a New York auction house. As he admitted in writing to the Seidel Defendants, in early 2019, he "was negotiating with Sotheby's to offer the Painting at auction" and in fact he was "close to finalizing" that arrangement when he learned the Painting was a forgery. (Seidel Supp. Decl. ¶ 1 and Ex. 1.) The only U.S.-based location

9

where Sotheby's conducts major auctions is its headquarters in New York. (*Id.* at ¶ 2.) Far from establishing jurisdiction here, Plaintiff's efforts to sell the Painting at auction, apparently in New York, only highlight why this case belongs in New York.

### C.    Plaintiff Cannot Lump the Seidel Defendants Together with their Co-Defendant for Purposes of Establishing Jurisdiction.

Plaintiff repeatedly attempts to conflate Defendant Frankfurt's California connections and activities with those of the Seidel Defendants for purposes of analyzing this Court's personal jurisdiction.  Indeed, much of Plaintiff's arguments for jurisdiction over the *Seidel Defendants* depend on unilateral actions allegedly taken by *Frankfurt* (including, for example, his place of residence at the time of sale and related phone calls). (*See* Opp. Br. at 7, 9.)  And at times, Plaintiff simply refers collectively to all the "Defendants."  (*Id.* at 9-13.)  Case law is clear that this "jurisdictional aggregation" approach is improper.

Plaintiff's allegations must establish jurisdiction over *each* separate defendant individually, which is why "grouping of the Defendants together to establish personal jurisdiction, general or specific, is inadequate." *Seldin v. HSN, Inc.*, No. 17-CV-2183-AJB-MDD, 2018 WL 3570308, at *8–9 (S.D. Cal. July 25, 2018).  And "[j]ust as the unilateral activity of a plaintiff cannot be attributed to a defendant, the unilateral activity of a third party cannot be so attributed." *IPS Shared Tech. Servs., Inc. v. Overwatch Sys., Ltd.*, No. C-14-1112 EMC, 2014 WL 2110341, at *3 (N.D. Cal. May 20, 2014).

Plaintiff apparently hopes to get around the well-established "no aggregation" rule by suggesting that Frankfurt was somehow a partner or affiliate of the Seidel Defendants, such that all their collective contacts should be aggregated for purposes of the jurisdictional analysis. (*See* Opp. Br. at 7, 17 (asserting that Defendant Frankfurt was the "California 'partner'" of the Seidel Defendants); *see also id.* at 2 (calling Frankfurt "her [Seidel's] associate in the deal"); *id.* at 13 (asserting that Seidel was "working with" Frankfurt).)  But such vague allegations of "association" do not absolve Plaintiff of his burden to show personal jurisdiction over the Seidel Defendants and Frankfurt *separately*.  Indeed, the

**REPLY IN SUPPORT OF MOTION TO DISMISS**

Ninth Circuit recently reversed a finding of jurisdiction over certain foreign entities simply because they were "closely associated[.]"  As the Ninth Circuit held, "'[c]losely associated' is not a proper jurisdictional test."  *In re Boon Glob. Ltd.*, 923 F.3d 643, 650–51 (9th Cir. 2019).  Rather, "each party's contacts with the forum state must be assessed individually." *Id.* (internal citations and alterations omitted).

Plaintiff suggests—without citing any facts—that the Seidel Defendants and Frankfurt were somehow affiliated, such that their jurisdictional contacts can be conflated. But these claims are entirely belied by the record.  Indeed, the evidence so far in this case, including Plaintiff's own declaration, shows that, if anything, Frankfurt acted as *Plaintiff's* representative in the transaction, providing *Plaintiff* with advice, and negotiating and communicating with the Seidel Defendants *on behalf of Plaintiff.*  (*See* Meyer Decl. at ¶¶ 4-6 (stating that Frankfurt advised him about the availability of the Painting, communicated to Seidel the Plaintiff's interest in buying the Painting, and, through telephone calls with Seidel, negotiated the price Plaintiff paid for the Painting); *see also* Seidel Decl. at ¶¶ 13, 16-17, 19-20 (describing Plaintiff as Frankfurt's "client" and explaining that Frankfurt communicated with Seidel on Plaintiff's behalf with respect to Plaintiff's purchase and shipping instructions); Seidel Supp. Decl. at ¶ 4 (again describing Plaintiff as Frankfurt's client); *see also* Frankfurt Decl. at ¶¶ 5-6 (describing Frankfurt's role as that of an "art advisor" who attended the meeting between Seidel and Plaintiff and had subsequent communications with Seidel in connection with the sale of the Painting to Plaintiff).)

In other words, even according to Plaintiff's version of events, Frankfurt and the Seidel Defendants were not "partners" or "working together" in this sale transaction, but rather they were on opposite sides of the deal; Frankfurt was advising and representing Plaintiff, who was the Seidel Defendants' *counterparty* in this sale transaction.  There is no factual or legal basis for attributing Frankfurt's California-based contacts and activities to the Seidel Defendants for purposes of the jurisdictional analysis here.  *See Zeiger v. WellPet LLC*, 304 F. Supp. 3d 837, 848–49 (N.D. Cal. 2018) ("Regardless of their joint liability, jurisdiction over each defendant must be established individually," and "it is

11

1  plaintiffs' burden to make a prima facie showing of these jurisdictional facts with regards
2  to each individual defendant").

3        **D.**    **The Exercise of Jurisdiction Over the Seidel Defendants Is Unreasonable.**

4        The Seidel Defendants have demonstrated why the exercise of jurisdiction would be
5  unreasonable, and Plaintiff, for his part, has not much to say in response. At most, Plaintiff
6  argues that several factors are neutral. For example, Plaintiff concedes that there is no
7  conflict of law at this early phase of the case (Opp. Br. at 17), but at best this factor is
8  neutral. *See Sarkar v. Malik India Int'l Bar & Rest. Inc.*, No. C06-2746 MEJ, 2006 WL
9  3201308, at *4 (N.D. Cal. Nov. 6, 2006) ("This factor concerns the extent to which the
10  district court's exercise of jurisdiction in California would conflict with the sovereignty of
11  the defendant's state of domicile[.] As neither party has raised such a conflict here, this
12  factor is neutral.").

13        While Plaintiff baldly asserts that Ms. Seidel need not do her work at any particular
14  place or time, and he insultingly speculates that her one-woman business could be
15  conducted remotely on lunch breaks and after business hours (Opp. Br. at 16-18), Plaintiff
16  also readily admits that a trial in New York would not be a severe hardship to him. (Meyer
17  Decl. at ¶ 13.) And while Plaintiff now frets that the time for a case to advance to trial
18  might be, on average, about eight months longer in New York than in this Court (Opp. Br.
19  at 17-18), Plaintiff's concerns about swift justice ring hollow given his leisurely pace in
20  filing this action—seven months after first sending a demand letter to Plaintiff. (*See* Seidel
21  Supp. Decl. at ¶ 1 and Ex. 1.)

22        Where, as here, the other reasonableness factors are neutral at best, and the Seidel
23  Defendants "did not interject [themselves] into California so as to satisfy the purposeful
24  availment prong, the Court finds that exercising jurisdiction over [them] would be
25  unreasonable." *Sarkar v. Malik India Int'l Bar & Rest. Inc.*, No. C06-2746 MEJ, 2006 WL
26  3201308, at *5 (N.D. Cal. Nov. 6, 2006). The Seidel Defendants should be dismissed from
27  this case under Rule 12(b)(2) for lack of personal jurisdiction.

28

## II.   ALTERNATIVELY, THE COURT SHOULD TRANSFER THIS CASE TO THE SOUTHERN DISTRICT OF NEW YORK.

The convenience of the parties and various public-interest considerations dictate that a transfer to the Southern District of New York would serve the convenience of the parties and witnesses and promote the interests of justice.[6]  *GemCap Lending I, LLC v. Bateman*, No. CV17-3305 PSG GJSX, 2017 WL 8183191, at *3 (C.D. Cal. July 17, 2017) (internal quotation marks, citations and alterations omitted).

### A.   Critical Non-Party Witnesses, Including a Likely Third-Party Defendant, Are Within the Subpoena Power of Courts In New York, But Not California.

"It is axiomatic that convenience of non-party witnesses is frequently the most important factor in the section 1404(a) calculus." *Galliani v. Citimortgage, Inc.*, No. 2:12-CV-00411-KJM, 2013 WL 101411, at *4–5 (E.D. Cal. Jan. 7, 2013).  This factor is undoubtedly more important than Plaintiff's convenience. *See Strickland v. Aramark Unif. & Career Apparel, LLC*, No. 214CV09851CASJEMX, 2015 WL 13742905, at *3 (C.D. Cal. May 1, 2015).  And here, Plaintiff apparently does not dispute that there is not a single potential non-party witness located in California, or for whom California would be a more convenient forum than New York.  (Opp. Br. at 22-23.)  Because New York is the most convenient forum for all critical non-party witnesses—in addition to all Defendants—the case should be transferred there.

Ignoring the convenience of numerous non-party witnesses, Plaintiff makes the rather remarkable argument that "the only *essential* witnesses are the parties themselves." (Opp. Br. at 22 (emphasis in original).)  But "essential" is not the standard.  Courts consider whether the testimony of non-party witnesses would be "relevant and material," but it need not be "essential" to the case.  *Galliani*, 2013 WL 101411, at *4–5; *see also Strickland v.*

---

[6] "Courts have repeatedly held that a change of venue from a forum where there is a difficult question of personal jurisdiction or venue to a district where there are not such uncertainties serves the interest of justice." *Multistate Legal Studies, Inc. v. Marino*, No. CV 96-5118 ABC RNBX, 1996 WL 786124, at *11 (C.D. Cal. Nov. 4, 1996).

**REPLY IN SUPPORT OF MOTION TO DISMISS**

*Aramark Unif. & Career Apparel, LLC*, No. 214CV09851CASJEMX, 2015 WL 13742905, at \*3–4 (C.D. Cal. May 1, 2015) ("[C]ourts must consider not only the number of witnesses, but also the nature and quality of their testimony," and holding that this factor favored defendant where defendant had "come forth with specific information concerning relevant witnesses in Kansas and the nature of their testimony").  And here, New York is more convenient for a number of witnesses, in addition to the New York-based Defendants, whose testimony will be unquestionably relevant and material.

**Julian Weissman.**  There is no dispute that Weissman is the source of the Painting at issue, and that Defendants merely brokered the sale of Weissman's Painting to Plaintiff. Indeed, most of the sale proceeds were transmitted to Weissman, and Defendants retained only modest commissions for themselves.  (*See* Opening Br. at 12; Seidel Decl. at ¶¶ 9-15, 18.)  Although Plaintiff now claims it is unclear what testimony Weissman might offer (Opp. Br. at 19, 22), Plaintiff's own demand letters discussed Weissman's alleged connection to the forgery scandal and this Painting.  (Seidel Supp. Decl. Ex. 1 at 2-3 and Ex. 2 at 1-2.)  And information about the Painting's history, provenance, and authenticity came from Weissman.  In other words, Weissman was the source of much of the information that formed the basis of what Plaintiff now characterizes as the Seidel Defendants' "misrepresentations."  (Opp. Br. at 1-5.)  So of course his testimony is material and relevant—indeed, it is essential—to shed crucial light on Plaintiff's claims that the Seidel Defendants knew or should have known that the Painting allegedly was a forgery.

Where Weissman is a New York resident, and he is ill, New York is of course more convenient for him; but, more crucially, as between the two proposed courts, New York is the only forum where he can be compelled to testify at trial.  *See Strausbaugh v. Medtronic, Inc.*, No. CV 13-8249 SVW-EX, 2014 WL 12696523, at \*4 (C.D. Cal. Aug. 8, 2014) (where a proposed transfer "would likely provide the [transferee] court with subpoena power over non-party witnesses," and absent transfer, the original court "likely will not have the same power," factor weighs in favor of transfer).  "Although alternatives to live testimony, such as videotaped depositions, are available," as Plaintiff proposes here, "live

**REPLY IN SUPPORT OF MOTION TO DISMISS**

testimony is nevertheless preferable.  Indeed, one of the aims of section 1404(a) is to avoid 'trial by deposition.'"  *Raynes v. Davis*, No. CV 05-6740ABCCTX, 2007 WL 4145102, at *4 (C.D. Cal. Nov. 19, 2007).

Perhaps most critically, the Seidel Defendants intend to assert third-party claims against Weissman if this case proceeds past the pleading stage.  But there appears to be no jurisdictional basis permitting them to assert such claims against him in this California proceeding.  Courts have recognized that, where a defendant's "ability to bring a third-party action pursuant to Rule 14(c) of the Federal Rules of Civil Procedure is precluded by the current venue of this cause of action," because the defendant cannot obtain jurisdiction over those potential third-party defendants here, that obstacle is "a relevant consideration in determining whether a motion to transfer should be granted."  *Bay Gulf Trading Co. v. M/V DIRK DANOS*, No. CIV. A. 95-1799, 1996 WL 175000, at *2 (E.D. La. Apr. 12, 1996).  Here, this case should be transferred so that Weissman can participate in this action, not only as a key witness, but as a third-party defendant.

**<u>Ruth Fine.</u>**  Ruth Fine's importance to the case is clear from Plaintiff's own Complaint, which repeatedly discusses the Mark Rothko catalogue raisonné that Ms. Fine is compiling.  (*See, e.g.*, Compl. at ¶¶ 6, 17; *see also* Seidel Supp. Decl. Ex. 2 at 1 n.2 (demand letter discussing catalogue raisonné).)  The Seidel Defendants did not interact with her directly, but rather they received information from Weissman regarding the Painting (Seidel Supp. Decl. at ¶ 8); thus, Ms. Fine's testimony would shed light on what she told Weissman about the Painting, and by extension what the Seidel Defendants knew or "should have known" about the Painting at the time of the sale.  Where even Plaintiff offers predictions on how Ms. Fine might testify (Opp. Br. at 23), it is clear that her testimony is, at the very least, relevant and material.  Again, though, she is outside this Court's trial-subpoena power; because she resides within 100 miles of the Southern District of New York, however, she can be compelled to testify there.

**B.**   **New York's Strong Interests in this Case Favor Transfer to New York.**

Plaintiff seeks to minimize New York's interest in this litigation, urging that "proceedings in other art fraud cases involving other parties and other facts have no relevance to the issues before this court," so "New York has no advantage in dealing with those issues." (Opp. Br. at 24.) This ignores that New York has been the forum for nearly a dozen criminal and civil actions arising out of *the very same forgery scheme that allegedly produced the Painting at issue here. See, e.g.*, *United States v. Glafira Rosales*, No. 13-cr-00518 (KPF); *Martin Hilti Family Trust v. Knoedler Gallery, LLC et al.*, No. 13 Civ. 657 (PGG) (HBP); *Fertitta v. Knoedler Gallery, LLC et al.*, No. 14–CV–2259 (JPO); *De Sole v. Knoedler Gallery, LLC et al.*, No. 12 Civ. 2313 (PGG)(HBP); *Howard v. Freedman*, 12 Civ. 5263 (PGG)(HBP). Indeed, Plaintiff's own February 28, 2019, demand letter cites repeatedly to some of these related cases, including ones involving Julian Weissman, and also cites Plaintiff's belief that the restitution fund set up for the victims of the forgery ring has been exhausted. (Seidel Supp. Decl. Ex. 1 at 3-4.) If this case is transferred to the Southern District of New York, it can be adjudicated by the same Court that has handled those numerous other related cases.[7]

---

[7] Plaintiff argues, in two short paragraphs and without citing any cases, that California law should govern this case. (Opp. Br. at 23.) But this Court need not rule on choice of law at this early phase. Rather, "[e]ven assuming for the sake of argument that California's substantive law should be applied, if this moves the needle at all against transfer . . . it does so only ever so slightly. As the Supreme Court has explained[,] federal judges routinely apply the substantive law of a State other than the State in which they sit," and "a federal district judge in California is fully capable of applying [another state's] law and vice versa." *Zerez Holdings Corp. v. Tarpon Bay Partners, LLC*, No. 2:17-CV-00029-TLN-DB, 2018 WL 402238, at *9 (E.D. Cal. Jan. 12, 2018); *Metz v. U.S. Life Ins. Co. in City of New York*, 674 F. Supp. 2d 1141, 1148 (C.D. Cal. 2009) (in transferring case from California to New York, noting that "judges in each jurisdiction are fully capable of deciding issues arising under" both California and New York law, and concluding that interest to parties and witnesses, and interest of justice all favored transfer).

**REPLY IN SUPPORT OF MOTION TO DISMISS**

Plaintiff sorely mischaracterizes the Seidel Defendants' arguments regarding New York's art market; this is not about "which city may be deemed the more important focus of contemporary art." (Opp. Br. at 24.) Rather, the Seidel Defendants simply note that, because of New York's prominent role in the global art ecosystem, New York courts time and time again have recognized that state's strong interest in regulating art transactions that happen there, the art professionals that operate there, and the integrity of its art market. And where this case arises out of an art deal originating in New York, involving multiple New York art professionals (the Seidel Defendants, Frankfurt, and Weissman), and linked to a New York-based art forgery ring, and where Plaintiff himself recently sought to auction the Painting through a New York auction house, clearly New York has the strongest interest in adjudicating this dispute.

## CONCLUSION

For the foregoing reasons, the Seidel Defendants respectfully submit that this Court should dismiss the claims against them for lack of personal jurisdiction. Alternatively, they ask that this case be transferred to the Southern District of New York.

Respectfully submitted,

Dated: March 24, 2020                **GROSSMAN LLP**

By: _Judd Grossman_ _____
        Judd B. Grossman (*pro hac vice*)
        Sarah E. Schuster (*pro hac vice*)

**COHEN WILLIAMS LLP**
Marc S. Williams
Brittany L. Lane

Attorneys for Defendants Susan Seidel and
Susan Seidel Inc.

17